UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VLADIMER MAMESTSARASHVILI,

Petitioner,

v.

MARKWAYNE MULLIN et al.,

Respondents.

CASE NO. 2:26-cv-00647-LK

ORDER GRANTING IN PART AND
DENYING IN PART HABEAS PETITION

This matter comes before the Court on Petitioner Vladimer Mamestsarashvili's petition for writ of habeas corpus. Dkt. No. 1. For the reasons described below, the Court grants the petition in part and denies it in part.[1]

## I.    BACKGROUND

Mamestsarashvili is "a 41-year-old citizen and national of Georgia" who "entered the United States on or around December 11, 2022." Dkt. No. 1 at 5. He was detained by the Department of Homeland Security ("DHS") and released on an Order of Release on Recognizance ("OREC")—issued "[i]n accordance with Section 236 of the Immigration and Nationality Act ("INA")," Dkt. No. 5-2 at 2—around December 14, 2022. Dkt No. 1 at 5; Dkt. No. 5-2 at 2. The

_____

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION - 1

OREC stated that he "must not violate any local, State, or Federal laws or ordinances." Dkt. No. 5-2 at 2.

On February 23, 2023, Mamestsarashvili was issued a Notice to Appear ("NTA") which listed him as a noncitizen "present in the United States who has not been admitted or paroled"— as opposed to an arriving noncitizen—and stated that he was "subject to removal from the United States pursuant to . . . [section] 212(a)(6)(A)(i) of the [INA][.]" Dkt. No. 5-3 at 2.

On January 19, 2026, Mamestsarashvili was stopped in Thompson Falls, Montana, for an "alleged speeding violation while operating a commercial tractor–trailer in the course of his lawful employment." Dkt. No. 1 at 5. He purportedly received a citation "for speeding 38 MPH in a 25 MPH zone[.]" Dkt. No. 6 at 3. Mamestsarashvili avers that, at the stop, "[h]e fully cooperated and presented valid identification, including a California driver's license and Valid Employment Authorization Document." Dkt. No. 1 at 5. He "was not arrested for any criminal offense and has no criminal history," and "[d]espite the stop involving only a minor traffic infraction, local authorities contacted DHS, and [Mamestsarashvili] was subsequently detained and transferred to immigration custody." *Id.*; *see also* Dkt. No. 5-4 at 3–4 (DHS records from January 20, 2026).[2] He remains detained at the Northwest ICE Processing Center [NWIPC]. *See* Dkt. No. 1 at 3; Dkt. No. 7 at 3.

Mamestsarashvili avers that prior to his re-detention, Respondents "did not provide any written notice explaining the basis for the revocation of his release," he "did not receive written notice of the reason for his re-detention," and he did not receive "a hearing before a neutral decisionmaker to determine if his re-detention is justified." Dkt. No. 1 at 2, 6. "Upon re-detention, ICE did not issue a new Form I-286 custody determination, did not provide written notice revoking

---

[2] In October 2025, Montana amended its stop and frisk law to provide that "[t]he peace officer shall make a report to a federal immigration agency . . . if a person stopped under this section is not lawfully present in the United States." Mont. Code Ann. § 46-5-401.

[his] prior order of release, and did not afford [him] an opportunity to seek bond redetermination prior to physical re-arrest." *Id.* Instead, his OREC revocation "was formally documented and served on [him] on March 4, 2026." Dkt. No. 6 at 3.

On February 23, 2026, Mamestsarashvili filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1. On March 10, 2026, Respondents[3] filed a return, Dkt. No. 4, and on March 16, 2026, Mamestsarashvili filed a traverse, Dkt. No. 7.

## II.   DISCUSSION

In his habeas petition, Mamestsarashvili asserts that Respondents violated his right to procedural due process under the Fifth Amendment based on the procedural deficiencies described above. Dkt. No. 1 at 3, 6–8, 10–11. He seeks immediate release as well as an order (1) "permanently enjoin[ing] his re-detention during the pendency of his removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that [he] is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks"; (2) enjoining Respondents "from placing GPS ankle monitors on [him] upon his release, absent clear and convincing evidence that [he] is a flight risk or danger a danger to the community and that no other alternatives would mitigate those risks"; and (3) declaring that his "re-detention while removal proceedings are ongoing without first proving an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment[.]" Dkt. No. 1 at 11–12. He also seeks attorney's fees and costs. *Id.* at 12.

---

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION - 3

## A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

**B.      Mamestsarashvili Has Established a Due Process Violation**

Like many petitions before the Court, Mamestsarashvili's petition ignores the statute to which he is subject, and instead essentially insists that due process demands the same procedures no matter which statute applies. *See* Dkt. No. 1 at 6–10. But the Ninth Circuit has rejected such a proposition, and this Court does too. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Id.*; *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION - 5

1. Process Required by Statute

    (a)   *8 U.S.C. § 1226(a) is the Applicable Statutory Authority*

Respondents aver that Mamestsarashvili is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) because he is an applicant for admission. Dkt. No. 4 at 4 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. Feb. 6, 2026)). Mamestsarashvili disagrees, arguing that position is "inconsistent with Respondents' own actions[.]" Dkt. No. 7 at 3.

8 U.S.C. § 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That express exception to detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

Respondents acknowledge that courts in this District have rejected their argument. Dkt. No. 4 at 4.[4] As stated in *Balwan*, 2026 WL 497098, at *4, this Court agrees with the reasoning of *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. Sept. 30, 2025) and countless other courts across the country: "The plain text of section 1226(a)" implies that the "default discretionary bond procedures in section 1226(a)"—rather than mandatory detention procedures under 8 U.S.C. § 1225(b)—apply to noncitizens who are "'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) but have not been implicated in any crimes as set forth in section 1226(c)." *Rodriguez Vazquez*, 802 F. Supp. 3d at 1322–23. "[I]f the Court

---

[4] Respondents state that they "are aware that this Court has previously found that an applicant for admission, released on OREC and then redetained, is subject to Section 1225(a)." *Id.* (citing *Balwan, v. Bondi et al.*, No. 2:26-CV-00248-LK, 2026 WL 497098, at *5 (W.D. Wash. Feb. 23, 2026)). Respondents' statement appears to be a scrivener's error; in *Balwan*, the Court found the petitioner subject to Section 1226(a). 2026 WL 497098, at *5.

ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION - 6

were to adopt the reading of section 1225 advanced by the [Respondents], it would render significant portions of section 1226(c) meaningless," including the recently enacted Laken Riley Act, which "carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority." *Id.* at 1325. Furthermore, had Congress had wanted Section 1225(b) to have the effect urged by the government, "it could have said so in words far simpler than those that it wrote." *Buenrostro-Mendez,* 166 F.4th at 511 (Douglas, J., dissenting (quoting *Biden v. Texas*, 597 U.S. 785, 798 (2022)).

Additionally, "where a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)). The government has treated Mamestsarashvili as subject to discretionary detention under 8 U.S.C. § 1226 from his arrival in the United States until his January 2026 detention. Specifically, after Mamestsarashvili entered the United States in December 2022, he was released on an OREC pursuant to "section 236 of the Immigration and Nationality Act," Dkt. No. 5-2 at 2, which is codified at 8 U.S.C. § 1226, *see Diouf v. Mukasey*, 542 F.3d 1222, 1227 (9th Cir. 2008). He was living freely and working in the community when arrested. *See* Dkt. No. 1 at 5–6.

As discussed above, unlike noncitizens detained under 8 U.S.C. § 1226(a), noncitizens detained under 8 U.S.C. § 1225(b) are subject to mandatory detention unless they are temporarily paroled into the United States "for urgent humanitarian reasons or significant public benefit[.]" *Jennings*, 583 U.S. at 283 (quoting 8 U.S.C. § 1182(d)(5)(A)). Nothing in the record prior to Mamestsarashvili's 2026 arrest suggests that his release was pursuant to Section 1225(b). Indeed,

ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION - 7

as discussed above, he was released on his own recognizance pursuant to Section 1226. Dkt. No. 5-2 at 2. And on the Form I-862, DHS selected the checkbox indicating that he is "an alien present in the United States who has not been admitted or paroled" and not the checkbox designating him "an arriving alien." Dkt. No. 5-3 at 2. These facts demonstrate that his detention is governed by 8 U.S.C. § 1226 rather than 8 U.S.C. § 1225.

As noted above, Mamestsarashvili does not discuss the adequacy (or lack thereof) of the procedural safeguards in Section 1226(a) and its implementing regulations, and absent any argument to the contrary, the Court assumes that these safeguards suffice for due process purposes. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). The Court addresses those safeguards below.

(b)    *Procedures Required under 8 U.S.C. § 1226(a) and Implementing Regulations*

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

As Respondents acknowledge, Dkt. No. 4 at 6, "[f]ederal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*,

583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and he is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an

immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

   2.   Due Process Requirements

As discussed above, Mamestsarashvili contends that his Fifth Amendment rights were violated by his re-detention without "written notice and a hearing before a neutral decisionmaker[.]" Dkt. No. 1 at 10. He alleges that "Respondents revoked [his] release and deprived him of his liberty without affording him any written notice or meaningful opportunity to be heard by a neutral decisionmaker prior to re-detention." *Id.* at 11. Respondents argue that Mamestsarashvili's re-detention "qualifies as a special case" in which a pre-deprivation hearing was not required because he "was not obeying all laws and ordinances," as required by his OREC, "when he was speeding in a large tractor-trailer." Dkt. No. 4 at 6. Mamestsarashvili replies that "[w]ithout a hearing, [he] had no opportunity to contest the allegation [of speeding], present evidence, or explain the circumstances of the citation," which "substantially increased the risk of erroneous deprivation of liberty." Dkt. No. 7 at 12. He further contends that the government failed to follow its own procedures when it revoked his OREC several weeks after he was detained. Dkt. No. 7 at 9 ("The Government's own evidence . . . confirms that Petitioner was detained first and that ICE only later attempted to generate documentation revoking his release.").

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the

ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION - 10

Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge. Id.* at 1179–80.

       (a)   *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION - 11

Here, after briefly detaining Mamestsarashvili in 2022, DHS released him on his own recognizance. Dkt. No. 5-2 at 2. He was living and working in the United States pursuant to a valid work authorization document, *see* Dkt. No. 1 at 2; Dkt. No. 5-4 at 3, and spent the vast majority of his three years in the United States released on an OREC, Dkt. No. 4 at 2. He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

(b)   *Procedural Protections*

To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Mamestsarashvili has a weighty private interest in remaining out of immigration detention. *See Morrissey*, 408 U.S. at 482. Despite his liberty interest being "indeterminate" under an OREC, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Mamestsarashvili has an interest in the government adhering to its own procedures requiring (1) a revocation made by an appropriate official and (2) a bond hearing

ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION - 12

at the outset of detention. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); 8 C.F.R. § 236.1(c)(9). This factor favors Mamestsarashvili.

Turning to the second factor, Mamestsarashvili argues that notice and a hearing are necessary "[t]o protect against arbitrary re-detention and to ensure the right to liberty[.]" Dkt. No. 1 at 8. Indeed, because Respondents purported to detain Mamestsarashvili under 8 U.S.C. § 1225(b), he was stripped of his right to a bond hearing. *See* Dkt. No. 4 at 4 ("Petitioner is mandatorily detained pursuant to 8 U.S.C. § 1225(b)(2)(A)."). Respondents also make no attempt to show that Mamestsarashvili's OREC was timely revoked by an appropriate official. "The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners without any individualized showing of why their detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion." *Escobar Salgado v. Mattos*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *24 (D. Nev. Nov. 17, 2025). The risk of erroneous deprivation is also significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained. *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations"). Because the above-described procedures operate to "prevent[ ] arbitrary revocations and ensure[ ] that detention decisions rest[ ] on individualized assessments of changed circumstances rather than categorical assumptions," *Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *5 (W.D. Wash. Oct. 7, 2025), adherence to the

ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION - 13

government's procedures would have mitigated the risk of erroneous deprivation. *See also Saravia*, 905 F.3d 1137 (upholding district court's classwide preliminary injunction requiring a prompt hearing for noncitizens suspected of gang activity at which the government would be required to demonstrate that changed circumstances justified arrest and detention). This factor weighs in favor of Mamestsarashvili.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, that interest is not impermissibly burdened by requiring the government to follow its own procedures regarding OREC revocations and bond hearings. This factor too weighs in favor of Mamestsarashvili.

Under *Matthews*, the Court finds that Respondents failed to provide Mamestsarashvili with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful.

**C.    The Court Denies Mamestsarashvili's Request Preventing Re-Detention or Setting Conditions on Release**

In addition to immediate release, Mamestsarashvili requests an order permanently enjoining "his re-detention during the pendency of his removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks[.]" Dkt. No. 1 at 11–12. He also requests an order enjoining Respondents from "placing GPS ankle monitors on [him] upon his release, absent clear and

ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION - 14

convincing evidence that [he] is a flight risk or danger a danger to the community and that no other alternatives would mitigate those risks[.]" *Id.* at 12. Respondents oppose the requested injunction barring future re-detention as "speculative and not ripe for review." Dkt. No. 4 at 6.

Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)). Nowhere in Mamestsarashvili's petition does he allege that re-detention is likely if he were to be released, that such detention is likely to occur without compliance with the government's regulations or policies, or that Respondents will place GPS monitoring devices on him without justification. Without argument or evidence that those outcomes are likely to occur, Mamestsarashvili's requests constitute nothing more than a "mere possibility" of harm that do not entitle him to relief. *Id.* For these reasons, the Court denies his request for injunctive relief regarding a potential future, post-release re-detention hearing, or regarding an ankle monitor if he is released.

### III.   CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1.    Respondents shall immediately release Mamestsarashvili from custody on the terms of his most recent OREC or other terms consistent with Section 1226(a);

ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION - 15

2.    The parties shall file a Joint Status Report by April 6, 2026, confirming that Mamestsarashvili has been released;

3.    Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 3rd day of April, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART HABEAS PETITION - 16